UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dr. Peter L. Elkin, and                                          Civ. No. 11-3652 (PAM/JJG)
Margaret Elkin,

Plaintiffs,

v.                                                              **MEMORANDUM AND ORDER**

State Farm Insurance Company,
and Minnesota Energy Resources
Corporation,

Defendants.

---

This matter is before the Court on Defendants' Motions for Summary Judgment.  For the reasons that follow, the Motions are granted.

## BACKGROUND

Until January 2010, Plaintiffs Peter and Margaret Elkin lived in Rochester, Minnesota, where Peter was a physician in the Mayo Clinic system.  They relocated to New York City in early 2010, but had not yet sold their house in Rochester at the time they moved.  At all relevant times, they maintained a homeowner's insurance policy on their Rochester home through Defendant State Farm Fire & Casualty Company.[1]  (Mozina Aff. (Docket No. 53) Ex. B.)

On March 9, 2010, Defendant Minnesota Energy Resources Corporation ("MERC") notified Plaintiffs that their gas bill was past due and that gas to the home would be shut off on March 24, 2010.  (Ahrens Aff. (Docket No. 50) Ex. 22 (Mar. 9, 2010, Shut-Off Notice).)

---

[1]  State Farm is misnamed in the Complaint as State Farm Insurance Company.

Plaintiffs had not informed MERC of their new mailing address, and thus this notice was sent to the Rochester address.  Plaintiffs claim that Mrs. Elkin called MERC on March 8, 2010, and arranged a payment plan with MERC, whereby she would pay $300 then via electronic transfer from the Elkins' bank account and the remaining balance on the account in April. (Id. Ex. 3 (M. Elkin Dep. Oct. 26, 2012) at 40.)  The record shows a credit of $300 to the Elkins' account on March 8, but that credit was from a check Mrs. Elkin wrote on February 27, 2010.  (Id. Ex. 26 (Pls.' US Bank account statement) at 6; Ex. 27 (copy of cancelled check to MERC dated Feb. 27, 2010).)  There is no record on either the Elkins' phone or MERC's phone system of any call from the Elkins' line to MERC at any time in January, February, or March 2010.  There is no dispute that the Elkins owed more than $300 to MERC in early March, and thus that the $300 payment did not bring the Elkins' account with MERC current.  (See id. Ex. 22 (Mar. 9, 2010, Shut-Off Notice showing $300 payment on Mar. 8, 2010, and reflecting a "past due amount" of $205.85).)

On March 24, 2010, MERC shut off the gas to the home.  As required by the Public Utilities Commission's Rate Tariff, a MERC service technician visited the home and hung door tags on both the front and back doors of the home with information about the gas shut-off.  (See Mozina Aff. Ex. A (copy of door tag); see also Ahrens Aff. Ex. 21 (Kelly Dep.) at 66 (testifying that MERC was required to hang door tags before turning off gas during cold weather season).)  In addition, a lock was placed on the gas meter.  The realtor who handled the Elkins' listing until June 2010 testified that he saw the door hangers in early June or earlier and took one inside to put with the pile of mail on the kitchen counter.  (Ahrens Aff.

Ex. 6 (Grover Dep.) at 26-28, 30.)  The Elkins' son was then attending the University of Minnesota and was to stop by the house on occasion to pick up the mail.  The Elkins deny ever seeing or receiving the door tags.

The Elkins contend that Mrs. Elkin called MERC in August 2010, in response to a notice regarding street construction in the area of the home that might temporarily disrupt the gas supply.  (Id. Ex. 3 ( M. Elkin Dep. Oct. 26, 2012) at 60-61.)  She claims that MERC told her then that no gas service had been disrupted by the construction, although she now concedes that she did not give the MERC representative her street address or ask him to specifically check on the gas supply to her home.  (Id.) Again, neither the Elkins' phone records nor MERC's phone logs show any call from the Elkins' number to MERC at any time in May, June, July, or August 2010.

In October 2010, the Elkins' new realtor called the Elkins because the house was cold. The Elkins did not respond to this concern.  (Ahrens Aff. Ex. 8 (Buryska Dep.) at 50-51.) In mid-November, the realtor e-mailed the Elkins, urging them to check on the heat in the home because there appeared to be no heat.  (Id. Ex. 16  (Nov. 17, 2010, email from Shawn Buryska to Mrs. Elkin).) He suggested that the Elkins hire a house sitter or other professional to keep an eye on the house.  (Id.)  Instead, the Elkins asked a former neighbor to check on the water level in the boiler.  The neighbor reported that the water level was fine. The Elkins claim that Mrs. Elkin called MERC at this time and that MERC told her that if she was receiving gas bills, the gas service was on.  (Am. Compl. ¶ 26; see also Ahrens Aff. Ex. 15 (M. Elkin Dep. Mar. 5, 2011) at 40-41.)  There is no dispute that MERC continued to send

3

monthly bills to the Elkins, although these bills reflected no gas usage and charged only a nominal service fee of approximately seven dollars.  Again, the phone records do not support any claimed phone call from the Elkins to MERC during this time.

On November 27, 2010, the realtor called the Elkins, telling them that the heat in the house was off and the house was very cold.  (Ahrens Aff. Ex. 8 (Buryska Dep.) at 93.)  Mrs. Elkin again contacted her former neighbor, who went to the house and found the boiler full of water.  The neighbor also noticed for the first time that there was a lock on the gas meter. (Id. Ex. 12 (Carlson Dep.) at 22.)  He contacted MERC and learned that the gas to the home had been turned off in March 2010.  (Id. Ex. 13 (Tr. of Nov. 27, 2010, call from Brian Carlson to MERC).)  The neighbor immediately called Mrs. Elkin to inform her of the situation.

Mrs. Elkin claims that she called MERC that day, Saturday, November 27, 2010.  The number she called was an emergency number for gas leaks, however, and she claims that she was told she would have to wait until Monday to get gas service reconnected.  (Am. Compl. ¶ 32.)  The phone records show that she called a second toll-free number for MERC that would have allowed to her speak with someone about having her service reconnected, but she disconnected the call without reaching a customer service representative.

On November 30th, the following Tuesday, Mrs. Elkin finally called MERC and talked to a customer service representative.  The Elkins claim that during the call the MERC representatives admitted that the gas had been disconnected in error and offered to waive the reconnect fee.  The call was recorded, however, and the transcript of the recording tells a

4

very different story. (Ahrens Aff. Ex. 29 (Tr. of Nov. 30, 2010, call from Mrs. Elkin to MERC).) During the call, the MERC representative told Mrs. Elkin that the gas was turned off in March for nonpayment, and that it could be reconnected for a reconnection fee of $30. (Id.) Mrs. Elkin declined to make the payment over the phone after she learned that a service fee of $3.95 would apply to a phone payment. (Id.) The representative also told Mrs Elkin that the first service appointment was two days away, on Thursday, December 2, and offered a morning or afternoon appointment. (Id.) Mrs. Elkin chose the afternoon appointment. (Id.)

On December 1, 2010, the realtor's assistant visited the home and discovered that the pipes had frozen and burst, causing significant damage to the home. (Id. Ex. 9 (Ely Dep.) at 26-27.) No one had been in the home since November 27, and there is no evidence in the record as to when the pipes burst. The Elkins submitted a claim to State Farm, which investigated the incident and ultimately denied the claim. The Elkins then brought this lawsuit against State Farm and MERC.

The Complaint raises four claims. Count I is a breach of contract claim against State Farm, contending that State Farm breached the terms of the policy by refusing to provide coverage. Count II contends that State Farm's refusal to provide coverage was in bad faith. Count III alleges that MERC breached its contract with the Elkins to provide natural gas to the home. Finally, Count IV is a negligence claim against MERC, contending among other things that MERC was negligent in failing to notify the Elkins that MERC shut off the gas, that MERC agreed to a payment plan but failed to turn on the gas as allegedly promised, and

that MERC negligently failed to promptly restore gas service in response to Mrs. Elkin's call in late November 2010.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Id. at 323; Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.     MERC**

The Elkins' claims against MERC must be dismissed, because the Public Utilities Commission has strictly limited MERC's liability for damage caused by the shut-off of gas services:

> [T]he Company shall not be liable for any losses, injuries, or damages resulting from any interruption, disturbance, deficiency or imperfection of service unless and to the extext that they are due to wilful misconduct or gross negligence on its part. In no event shall the Company be liable for any loss of profits or other consequential damages resulting from the use of service or from an interruption, disturbance, deficiency or imperfection of service.

(Klay Aff. Ex. 20 (MERC's PUC Rate Tariff) at MERC246.)  The Elkins have not alleged willful misconduct or gross negligence on the part of MERC, and their claims must be dismissed on this basis alone.

The claims also fail on the merits, however.  There is no evidence in the record of anything approaching a contract between the Elkins and MERC, whether with regard to the provision of natural gas to the home or with regard to the alleged payment plan that the Elkins say they had with MERC in March 2010.  A contract requires an offer, acceptance, and consideration.  MERC did not send the shut-off notice until March 9, 2010, after the date the Elkins and MERC supposedly entered into the payment plan to avoid the shut-off.  Thus, the alleged payment plan could not have been in consideration of MERC not shutting off the gas, and there was no contract.

The negligence claim similarly fails.  The Elkins claim that MERC's policies prohibit shutting off the gas during the cold weather period of November 15 to April 15, but that policy applies only if the customer's income is 50% or less of Minnesota's median income.  (Ahrens Aff. Ex. 20 (MERC's PUC Rate Tariff) at MERC233.)  Although the Elkins claim that MERC did not know whether their income was below the threshold, it is the customer's burden to inform MERC that their income is below the threshold, and the Elkins have not in

7

any case come forward with evidence that their income was in fact below the 50% threshold at this time.

Moreover, the Elkins have apparently not retained any expert witnesses in this case to testify as to causation or damages. An expert witness may not be required to establish damages, but an expert witness is almost certainly necessary to testify as to causation. There is no evidence in the record to establish when the pipes burst, which is an essential element of the Elkins' claims against MERC. If, for example, the pipes burst on November 28 or 29, before Mrs. Elkins called MERC on November 30, there can be no claim of negligence arising out of MERC's alleged failure to immediately reconnect the gas.

Finally, even if there was evidence that the pipes did not burst until after Mrs. Elkin called MERC, MERC was not negligent in offering Mrs. Elkin an appointment two days away for reconnecting gas service. There is no dispute that Mrs. Elkin did not ask for immediate reconnection, and in fact she chose not to take the earliest service time offered.

The Elkins' claims against MERC are without merit and must be dismissed.

**B.     State Farm**

The Elkins' homeowners policy provides that, if the home is "vacant, unoccupied or being constructed," State Farm will not pay for any damage "caused by . . . freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing" unless the insured has "used reasonable care to maintain heat in the building" or has "shut off the water supply and drain[ed] the system and appliances of

8

water." (Mozina Aff. Ex. B (Docket No. 53-1) at 9.)  State Farm denied coverage in this case because it found that the Elkins had not used reasonable care to ensure that the home was heated.  The Elkins do not dispute that they did not shut off the water supply and drain the system of water.

The evidence in this case compels the conclusion that the Elkins did not use reasonable care to maintain the heat in the house.  They ignored warnings from MERC, they ignored bills showing no gas usage, and they did not respond with any urgency when their realtor told them in October that the house was very cold.  The Elkins attempt to blame their failures on others, but it was their responsibility under the policy to ensure that the home was heated.  They utterly failed to do this.  Therefore, State Farm did not breach its contract with the Elkins by determining that the policy did not provide any coverage for the water damage to the home.[2]

The Elkins' policy with State Farm allowed State Farm to refuse to provide coverage in this case.  The Elkins' claims against State Farm must be dismissed.

**CONCLUSION**

There are no genuine issues of material fact on the Elkins' claims in this matter.

Accordingly, **IT IS HEREBY ORDERED that**:

1.      State Farm's Motion for Summary Judgment (Docket No. 23) is **GRANTED**;

---

[2]  As stated at the hearing, there are questions of fact as to State Farm's alternative basis for denying the Elkins' claims.  The Court will not discuss that alternative claim further.

9

2.      MERC's Motion for Summary Judgment (Docket No. 27) is **GRANTED**; and

3.      The Amended Complaint (Docket No. 1-2) is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: <u>July 2, 2013</u>

                                          <u>*s/ Paul A. Magnuson*</u>
                                          Paul A. Magnuson
                                          United States District Court Judge